## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

GPGC LIMITED,

                         Petitioner,

     v.

THE GOVERNMENT OF THE
REPUBLIC OF GHANA,

                    Respondent.

No. 1:24-cv-00169-JEB

## PETITIONER'S MOTION FOR ENTRY OF DEFAULT JUDGMENT

Pursuant to 9 U.S.C. §§ 6 and 207 and 28 U.S.C. § 1608(e), petitioner GPGC Limited ("GPGC") moves for the entry of a default judgment against respondent The Government of the Republic of Ghana ("Ghana"). This motion is supported by the accompanying memorandum of points and authorities; the previously filed declarations of Robert K. Kry (Dkt. 1-1), Abdul Baasit Aziz Bamba (Dkt. 1-10), Patrick Burke (Dkt. 1-12), and Christopher Bailey (Dkt. 1-13), and the exhibits attached thereto; the previously filed service declaration of Robert K. Kry (Dkt. 8) and the exhibits attached thereto; the supplemental declarations of Patrick Burke and Robert K. Kry filed herewith and the exhibits attached thereto; and the other cited materials previously filed in the case. A proposed order granting the motion and proposed form of judgment are attached.

GPGC filed the petition in this case to recognize and enforce an arbitral award rendered in favor of GPGC and against Ghana by a tribunal of the Permanent Court of Arbitration in an arbitration captioned *GPGC Ltd. v. Government of the Republic of Ghana*, PCA Case No. 2019-05. As the accompanying memorandum explains, this Court has subject-matter jurisdiction under 9 U.S.C. § 203 and 28 U.S.C. § 1330(a). Ghana is not entitled to sovereign immunity because it

waived its immunity in the Emergency Power Agreement and because this matter falls within the Foreign Sovereign Immunities Act's arbitration exception.  28 U.S.C. § 1605(a)(1), (6).  The Court has personal jurisdiction over Ghana under 28 U.S.C. § 1330(b).

GPGC duly served Ghana under 28 U.S.C. § 1608(a)(3) by arranging for the Clerk of Court to dispatch copies of the petition, summons, and notice of suit to Ghana's Minister for Foreign Affairs and Regional Integration in Accra, Ghana, and obtaining a signed confirmation of receipt dated January 29, 2024.  Ghana's response was due on March 29, 2024, but Ghana has not filed any response or otherwise appeared in the case.

GPGC has shown its entitlement to relief on the merits as required by 28 U.S.C. § 1608(e).  GPGC has furnished competent proof of its arbitral award against Ghana and the underlying agreement and is entitled to recognition and enforcement under Chapter 2 of the Federal Arbitration Act and the New York Convention.  9 U.S.C. § 207.  No defense to recognition and enforcement has been shown or exists.

The Court should accordingly grant GPGC's petition as unopposed and enter judgment in the form attached against Ghana for USD $111,493,828.92 plus USD $26,456.52 for each day that has elapsed between June 7, 2024, and the date of entry of judgment, plus post-judgment interest as provided by 28 U.S.C. § 1961.

Dated:   June 7, 2024                          Respectfully submitted,
         Washington, D.C.


                                               _/s/ Robert K. Kry_____
Sara Tofighbakhsh                              Robert K. Kry
(*pro hac vice*)                               D.C. Bar # 490545
MOLO LAMKEN LLP                                MOLO LAMKEN LLP
430 Park Avenue, 6th Floor                     The Watergate, Suite 500
New York, New York  10022                      600 New Hampshire Avenue, N.W.
(212) 607-8179                                 Washington, D.C.  20037
stofighbakhsh@mololamken.com                   (202) 556-2011
                                               rkry@mololamken.com

                   *Attorneys for Petitioner GPGC Limited*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

GPGC LIMITED,

                Petitioner,

     v.

THE GOVERNMENT OF THE
REPUBLIC OF GHANA,

           Respondent.

No. 1:24-cv-00169-JEB

---

**PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF MOTION FOR ENTRY OF DEFAULT JUDGMENT**

Sara Tofighbakhsh
(*pro hac vice*)
MOLO LAMKEN LLP
430 Park Avenue, 6th Floor
New York, New York  10022
(212) 607-8179
stofighbakhsh@mololamken.com

Robert K. Kry
D.C. Bar # 490545
MOLO LAMKEN LLP
The Watergate, Suite 500
600 New Hampshire Avenue, N.W.
Washington, D.C.  20037
(202) 556-2011
rkry@mololamken.com

*Attorneys for Petitioner GPGC Limited*

## TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 2

I.      The Emergency Purchase Agreement ................................................................... 2

II.     Ghana's Wrongful Termination of the Agreement ............................................... 3

III.    The Arbitral Award ............................................................................................... 4

IV.     The English Proceedings and Partial Payments ................................................... 6

V.      This Enforcement Proceeding .............................................................................. 7

ARGUMENT ...................................................................................................................... 7

I.      The Court Has Subject-Matter Jurisdiction ......................................................... 8

        A.      Ghana Explicitly Waived Its Immunity ................................................... 8

        B.      This Action Falls Within the FSIA's Arbitration Exception ................... 9

II.     The Court Has Personal Jurisdiction and Venue ............................................... 10

III.    GPGC Properly Served Ghana ........................................................................... 11

IV.     GPGC Has Shown Its Entitlement to Relief ...................................................... 12

        A.      GPGC Satisfies the Threshold Requirements for Enforcement ............ 12

        B.      There Is No Basis for Denying Enforcement ........................................ 13

        C.      GPGC Is Entitled to Post-Award Interest ............................................. 16

CONCLUSION ................................................................................................................. 18

# TABLE OF AUTHORITIES

Page(s)

## CASES

*A.D. Trade Belgium S.P.R.L. v. Republic of Guinea*,
    No. 22-cv-245, 2023 WL 2733773 (D.D.C. Mar. 31, 2023) ....................................................14

*Abur v. Republic of Sudan*,
    437 F. Supp. 2d 166 (D.D.C. 2006) ........................................................................................12

*Africard Co. v. Republic of Niger*,
    210 F. Supp. 3d 119 (D.D.C. 2016) ........................................................................................14

*Archirodon v. Gen. Co. for Ports of Iraq*,
    No. 22-cv-1571 (D.D.C.) ........................................................................................................11

*Barot v. Embassy of Republic of Zambia*,
    785 F.3d 26 (D.C. Cir. 2015) ..................................................................................................11

*Belize Bank Ltd. v. Gov't of Belize*,
    852 F.3d 1107 (D.C. Cir. 2017) ..............................................................................................15

*Commodities & Mins. Enter. Ltd. v. CVG Ferrominera Orinoco, C.A.*,
    49 F.4th 802 (2d Cir. 2022) ....................................................................................................16

*Compagnie Sahelienne d'Entreprise v. Republic of Guinea*,
    No. 20-cv-1536, 2021 WL 2417105 (D.D.C. June 14, 2021) .................................................14

*Cont'l Transfert Tech. Ltd. v. Fed. Gov't of Nigeria*,
    932 F. Supp. 2d 153 (D.D.C. 2013) ........................................................................................16

*Creighton Ltd. v. Gov't of State of Qatar*,
    181 F.3d 118 (D.C. Cir. 1999) ..................................................................................................9

*Doe v. Democratic People's Republic of Korea Ministry of Foreign Affairs
Jungsong-Dong*, 414 F. Supp. 3d 109 (D.D.C. 2019) .............................................................11

*Ewan v. Islamic Republic of Iran*,
    466 F. Supp. 3d 236 (D.D.C. 2020) ........................................................................................12

*Gates v. Syrian Arab Republic*,
    646 F.3d 1 (D.C. Cir. 2011) ....................................................................................................11

*Gebre LLC v. Kyrgyz Republic*,
    No. 20-cv-1795, 2022 WL 2132481 (D.D.C. June 14, 2022) .................................................14

*Gulf Res. Am., Inc. v. Republic of Congo*,
    370 F.3d 65 (D.C. Cir. 2004) ..............................................................................8

*Han Kim v. Democratic People's Republic of Korea*,
    774 F.3d 1044 (D.C. Cir. 2014) .........................................................................12

*Int'l Trading & Indus. Inv. Co. v. DynCorp Aerospace Tech.*,
    763 F. Supp. 2d 12 (D.D.C. 2011) .....................................................................13

*Karcher v. Islamic Republic of Iran*,
    249 F. Supp. 3d 557 (D.D.C. 2017) ....................................................................11

*LLC SPC Stileks v. Republic of Moldova*,
    985 F.3d 871 (D.C. Cir. 2021) ..................................................................9, 16, 17

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985) ...........................................................................................13

*Prac. Concepts, Inc. v. Republic of Bolivia*,
    811 F.2d 1543 (D.C. Cir. 1987) .........................................................................10

*Price v. Socialist People's Libyan Arab Jamahiriya*,
    294 F.3d 82 (D.C. Cir. 2002) .............................................................................10

*Scherk v. Alberto-Culver Co.*,
    417 U.S. 506 (1974) ...........................................................................................12

*TMR Energy Ltd. v. State Prop. Fund of Ukraine*,
    411 F.3d 296 (D.C. Cir. 2005) ...........................................................................13

*Tatneft v. Ukraine*,
    21 F.4th 829 (D.C. Cir. 2021) ...........................................................................16

*TermoRio S.A. E.S.P. v. Electranta S.P.*,
    487 F.3d 928 (D.C. Cir. 2007) ...........................................................................13

*Thuneibat v. Syrian Arab Republic*,
    167 F. Supp. 3d 22 (D.D.C. 2016) .....................................................................11

*VAMED Mgmt. und Serv. GmbH v. Gabonese Republic*,
    No. 22-cv-3737, 2024 WL 1092232 (D.D.C. Mar. 13, 2024) ................................14

*Williams v. Romarm, SA*,
    756 F.3d 777 (D.C. Cir. 2014) ...........................................................................10

*World Wide Mins., Ltd. v. Republic of Kazakhstan*,
    296 F.3d 1154 (D.C. Cir. 2002) ...........................................................................9

## CONSTITUTIONAL PROVISIONS, TREATY PROVISIONS, AND STATUTES

U.S. Const. amend. V ................................................................................................10

Convention on the Recognition and Enforcement of Foreign Arbitral Awards,
    June 10, 1958, 21 U.S.T. 2517:

    Art. I.1, 21 U.S.T. at 2519 .............................................................................10, 13

    Art. I.3, 21 U.S.T. at 2519 .............................................................................10, 13

    Art. III, 21 U.S.T. at 2519 ..................................................................................13

    Art. IV, 21 U.S.T. at 2519-20 .............................................................................13

    Art. V, 21 U.S.T. at 2520 ....................................................................................13

    Art. V.1, 21 U.S.T. at 2520 .................................................................................13

    Art. V.1(c), 21 U.S.T. at 2520 ............................................................................15

    Art. V.1(d), 21 U.S.T. at 2520 ............................................................................14

    Art. V.2, 21 U.S.T. at 2520 .................................................................................15

    Art. V.2(a), 21 U.S.T. at 2520 ............................................................................15

    Art. V.2(b), 21 U.S.T. at 2520 ............................................................................15

    Accession note, 21 U.S.T. at 2560 ..................................................................10, 13

9 U.S.C. § 2 ..............................................................................................................15

9 U.S.C. § 201 ...........................................................................................................7

9 U.S.C. § 202 ...........................................................................................................8

9 U.S.C. § 203 ...........................................................................................................8

28 U.S.C. § 1330(a) ...............................................................................................8, 10

28 U.S.C. § 1330(b) ..................................................................................................10

28 U.S.C. § 1391(f)(4) ...............................................................................................10

28 U.S.C. § 1605(a)(1) ................................................................................................8

28 U.S.C. § 1605(a)(6) ................................................................................................9

28 U.S.C. § 1608 .................................................................................................10, 11

28 U.S.C. § 1608(a)(1) ...............................................................................................11

28 U.S.C. § 1608(a)(2) ...............................................................................................11

28 U.S.C. § 1608(a)(3) ........................................................................................7, 11, 12

28 U.S.C. § 1608(d) ..............................................................................................7, 12

iv

28 U.S.C. § 1608(e).........................................................................................................2, 12

28 U.S.C. § 1961.................................................................................................................17

**OTHER AUTHORITIES**

Albert Jan van den Berg, *The New York Arbitration Convention of 1958* (1981).........................15

*CIA World Factbook: Ghana* (May 30, 2024)............................................................................11

H.R. Rep. No. 94-1487 (1976)..................................................................................................8

Restatement (Third) of the U.S. Law of International Commercial and Investor-
  State Arbitration (rev. 2023)...............................................................................................15

U.S. District Court for the District of Columbia, *Clerk's Office Procedures for
  Service of Process on a Foreign Defendant* (May 2022) ........................................................12

U.S. District Court for the District of Columbia, *Service of Process on a Foreign
  Defendant: Checklist for Attorneys* (May 2022).....................................................................12

U.S. District & Bankruptcy Courts for the District of Columbia, *Affidavit
  Requesting Foreign Mailing* (June 2018) ...............................................................................12

UNCITRAL Secretariat, *Guide on the Convention on the Recognition and
  Enforcement of Foreign Arbitral Awards* (2016 ed.)..............................................................15

Petitioner GPGC Limited ("GPGC") respectfully moves for the entry of a default judgment against respondent The Government of the Republic of Ghana ("Ghana").[1]

## INTRODUCTION

This is an arbitral enforcement proceeding under the New York Convention. GPGC seeks to recognize and enforce an arbitral award against Ghana. The arbitration arose out of an Emergency Power Agreement between the parties, under which GPGC was required to dismantle two power plants in Italy, install them in Ghana, and operate them in exchange for the right to payments for four years. Ghana was required to designate a site for installation of the power plants and assist GPGC in fulfilling necessary conditions. It never did so. Instead, a newly elected government decided to terminate the contract without a proper basis and without paying the amounts it owed to GPGC under the contract.

GPGC brought arbitration proceedings in London pursuant to the arbitration clause in the Emergency Power Agreement. The tribunal awarded damages to GPGC for Ghana's wrongful termination. Ghana briefly sought to challenge the Award in the English courts, but the High Court refused to grant an extension of time to file that challenge after concluding that Ghana's proposed objections were so intrinsically weak that they did not even merit an extension.

Over the years, Ghana has made a series of sporadic partial payments on the Award, and certain other amounts have been recovered in enforcement proceedings in England. But Ghana still has not paid off even the principal portion of the Award, let alone the interest that continues to accumulate. GPGC therefore filed the petition to enforce the Award in this Court.

---

[1] This motion refers to and incorporates by reference the previously filed declarations of Robert K. Kry (Dkt. 1-1) ("Kry Decl."), Abdul Baasit Aziz Bamba (Dkt. 1-10) ("Bamba Decl."), Patrick Burke (Dkt. 1-12) ("Burke Decl."), and Christopher Bailey (Dkt. 1-13) ("Bailey Decl."), as well as the service declaration of Robert K. Kry (Dkt. 8) ("Kry Service Decl."). The motion also refers to the supplemental declaration of Patrick Burke ("Burke Supp. Decl.") and the supplemental declaration of Robert K. Kry ("Kry Supp. Decl.") filed herewith.

1

Despite being properly served, Ghana failed to appear or respond to the petition. GPGC therefore respectfully requests that the Court grant the petition as unopposed and enter a judgment by default. The Foreign Sovereign Immunities Act requires the Court, before entering a default judgment, to find that the claimant has established its right to relief "by evidence satisfactory to the court." 28 U.S.C. § 1608(e). GPGC sets forth the basis for its right to relief below.

## BACKGROUND

### I.    THE EMERGENCY PURCHASE AGREEMENT

In 2015, the Republic of Ghana responded to an energy crisis by contracting with various companies to build new generating capacity. Award ¶¶ 147-148 (Kry Decl. Ex. A). One of those companies was GPGC. On June 3, 2015, Ghana and GPGC executed an Emergency Purchase Agreement ("EPA") that required GPGC to dismantle two existing gas turbine power plants in Italy, transport them to Ghana, install them, and operate and maintain them. EPA §§ 6, 8 (Bamba Decl. Ex. A); Award ¶ 148. In return, GPGC would receive payments for a guaranteed term of four years. EPA §§ 2(a), 11; Award ¶ 147.

The EPA required each party to satisfy certain conditions precedent. Ghana was required to obtain parliamentary ratification for the EPA, obtain parliamentary approval for tax exemptions, inspect and approve the power plants, and provide "Unimpeded Access to a Site" where the power plants would be installed. EPA § 3(a).

The EPA also required each party to satisfy certain conditions subsequent. GPGC was required to acquire a power generation license from Ghana's Energy Commission and enter into agreements with Ghana's electric grid operator and water utility. EPA § 4(a). Each party had to use its "best endeavours to assist the other Party in satisfying each Condition Subsequent." *Id.* § 4(d). Either party could terminate the EPA for the other party's failure to achieve a condition

subsequent within 30 days, but only if the failure was "wholly attributable to the action or inaction" of the other party.  *Id.* §§ 4(f), (g).

If Ghana purported to terminate the agreement contrary to its terms, or if GPGC terminated the agreement due to Ghana's breach, Ghana was required to pay GPGC an "Early Termination Payment" based on anticipated tolling charges for the first two years.  EPA § 25(b)(i).  The Early Termination Payment included "mobilization, and/or demobilization costs . . . and any other reasonably incurred cost by GPGC as a result of an Early Termination."  EPA at 5.

The EPA provided that any disputes would be settled by UNCITRAL arbitration in London under English law.  EPA §§ 28(f), (g).  It stated that "the arbitrators shall . . . be guided by the terms and conditions of this Agreement" and that "[t]he decision of the arbitrators shall be final and binding upon both parties."  *Id.* § 28(f)(xvii).

## II.    GHANA'S WRONGFUL TERMINATION OF THE AGREEMENT

Ghana's Parliament ratified the EPA on July 23, 2015.  Award ¶ 160.  Ghana initially selected a site called Aboadze for installation of the power plants, but Aboadze contained an oxidation pond that had to be moved.  *Id.*  Ghana's representatives repeatedly told GPGC that the government would relocate the pond, but it never did.  *Id.*  Instead, in April 2016, Ghana's Ministry of Power revoked the Aboadze designation and directed GPGC to install the plants at another site called Kpone instead.  *Id.*  In August 2016, however, public union employees at Ghana's power agency began protesting the use of government property by private investors such as GPGC.  *Id.*  Ghana's power agency then notified GPGC that it would not make Kpone available after all.  *Id.*

In the meantime, GPGC had dismantled the two power plants in Italy and shipped them to Ghana.  Award ¶¶ 149, 160.  Due to Ghana's repeated failures to designate a site, GPGC identified a third site known as Blue Ocean and began installing the plants there instead.  *Id.* ¶ 160.

In December 2016, Ghana held a general election. Award ¶150. The new government believed that its predecessor had purchased too much power, so without GPGC's knowledge, Ghana's Ministry of Power formed a "PPA Committee" to review the various purchase agreements. *Id.* ¶¶150-151. The PPA Committee estimated that it would cost USD $18 million to terminate the EPA, far less than the excess capacity charges of USD $24.9 million per year that Ghana would incur if it complied with its contractual obligations. *Id.* ¶160. The PPA Committee recommended negotiating a termination of the EPA based on the amount of costs GPGC had incurred. *Id.*

On February 18, 2018, Ghana purported to terminate the EPA, claiming that GPGC had failed to satisfy certain contractual conditions. Award ¶¶154-155. On August 13, 2018, GPGC served its own notice of termination based on Ghana's repudiation of the contract. *Id.* ¶157.

## III.    THE ARBITRAL AWARD

On August 13, 2018, GPGC served a notice of arbitration. Award ¶10. The case was heard before a panel of three esteemed arbitrators, including a Ghanaian national that Ghana chose as its party-appointed arbitrator. *Id.* ¶¶6-8. After lengthy pre-hearing proceedings, the case proceeded to a five-day merits hearing from October 5 to 9, 2020. *Id.* ¶134.

On January 26, 2021, the tribunal issued a comprehensive Final Award, unanimously concluding that Ghana had wrongfully repudiated the EPA. Award ¶555. The tribunal found that Ghana failed to comply with its conditions precedent because it never provided unimpeded access to a site for the power plants, never obtained parliamentary approval for tax exemptions, and was late obtaining parliamentary approval for the EPA. *Id.* ¶¶369-371.

Although GPGC did not fulfill certain conditions subsequent, that failure could not be grounds for termination unless it was "wholly attributable to the action or inaction of GPGC." Award ¶386 (quoting EPA §4(g)). The tribunal concluded that Ghana was responsible for

GPGC's inability to satisfy the conditions because Ghana failed to provide a site for the plants or assist GPGC in obtaining necessary licenses and agreements. *Id.* ¶ 387.

The tribunal concluded that Ghana had decided to terminate the EPA in an effort to save costs. The "true reason for the purported termination of the EPA" was the PPA Committee's recommendation that Ghana "negotiate a settlement under which it would only compensate GPGC for its actual development costs rather than what GPGC was entitled to under the contract." Award ¶ 492. "[Ghana's] sole reason for terminating the GPGC contract was that its faithful performance would be expensive, that all of the electricity generated would be excess and that [Ghana] thought [it] could negotiate a settlement based on termination against a payment of [USD] 18 million. So this was a cost/benefit analysis pure and simple . . . ." *Id.*

Applying the Early Termination Payment formula in the EPA, the tribunal awarded GPGC USD $69,361,680 for two years of anticipated tolling charges. Award ¶¶ 508-509, 519. The tribunal also awarded USD $40,223,260 in mobilization costs and USD $18,268,745 in debt financing costs, rejecting Ghana's argument that those costs should not have been incurred until the site was certain. *Id.* ¶¶ 463-472, 521-526. The tribunal awarded another USD $6,462,528 for demobilization costs and USD $32,448 in preservation and maintenance costs. *Id.* ¶¶ 530-531. The total Early Termination Payment award was USD $134,348,661. *Id.* ¶ 532.

The tribunal ordered Ghana to pay interest on the Early Termination Payment at the contractually specified rate of six-month USD LIBOR plus 6%, compounded monthly. Award ¶¶ 535, 545. The tribunal ordered Ghana to pay nearly all of GPGC's fees and expenses for the arbitration, a total of USD $3,309,877.74. Award ¶¶ 551-554. Finally, the tribunal awarded interest on those costs at the rate of three-month USD LIBOR, compounded quarterly. *Id.* ¶ 546.

**IV.    THE ENGLISH PROCEEDINGS AND PARTIAL PAYMENTS**

Under English law, Ghana had 28 days to challenge the Award in the English courts. Bailey Decl. ¶ 3.  Ghana sought and obtained an extension.  Bailey Decl. ¶ 4 & Ex. B.  But Ghana then missed the extended deadline.  *Id.* ¶ 5.  Instead, three weeks after the deadline, Ghana filed a second application for an extension.  *Id.*

The English court rejected that application.  Bailey Decl. Ex. C.  The court explained that it would not ordinarily consider the merits of a party's claims in ruling on a motion for extension of time.  *Id.* ¶ 29.  But this was "one of the relatively infrequently encountered cases in which the court can see . . . that the grounds of the proposed challenge are intrinsically weak." *Id.* ¶ 30.  First, Ghana claimed that "the Tribunal had failed . . . to conduct the arbitration in accordance with the procedure agreed by the parties" because the EPA required the tribunal to be "guided by the terms and conditions of the [Contract]" and, in Ghana's view, the tribunal departed from those terms. *Id.* ¶ 10(a).  The court deemed that argument "a clear case of an attempt to present alleged errors of law as errors of procedure."  *Id.* ¶¶ 31-32.  Second, Ghana claimed that "the Tribunal had failed to deal with all the issues put to it" because it "failed to consider [Ghana]'s arguments as to why mobilisation costs were not payable."  *Id.* ¶ 10(b).  The court rejected that claim because the tribunal ***did*** consider those arguments.  *Id.* ¶¶ 33-34 (citing Award ¶¶ 463-464, 522).

Ghana has made a series of partial payments.  Between September 17, 2021 and June 19, 2023, Ghana made five payments totaling USD $74,348,661.  Burke Decl. ¶¶ 3-7.  On February 2, 2024, Ghana made a sixth payment of USD $19,000,000.  Burke Supp. Decl. ¶ 2.  In addition, on October 12, 2023, the English High Court appointed receivers to collect proceeds from Ghana's interest in certain real property in London.  *Id.* ¶ 3.  GPGC has received a total of USD $1,897,692.40 from the receivers so far.  *Id.*  Ghana has made no other payments in connection

with the Award.  *Id.* ¶4.  As of June 7, 2024, the total amount due with interest is USD $111,493,828.92.  Kry Supp. Decl. Ex. A.

## V.    THIS ENFORCEMENT PROCEEDING

On January 19, 2024, GPGC filed this proceeding to recognize and enforce the Award under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517 (the "New York Convention"), and Chapter 2 of the Federal Arbitration Act, 9 U.S.C. §§ 201 *et seq*.  Dkt. 1.

GPGC served Ghana pursuant to Section 1608(a)(3) of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1608(a)(3).  Specifically, on January 23, 2024, GPGC requested that the Clerk of Court dispatch copies of the petition, notice of suit, and summons to the Honorable Shirley Ayorkor Botchwey, Ghana's Minister for Foreign Affairs and Regional Integration, in Accra, Ghana.  Kry Service Decl. ¶2.  The Clerk filed a certificate of service reporting that the materials were sent by DHL the same day.  Dkt. 7.  DHL delivered the materials in Ghana on January 29, 2024, and furnished a signed confirmation of receipt.  Kry Service Decl. ¶4 & Ex. C.

Ghana's response to the petition was due on March 29, 2024.  28 U.S.C. § 1608(d).  Ghana has not appeared in the action or filed any response to the petition.  On April 24, 2024, the Clerk entered a notice of default.  Dkt. 10.  GPGC now requests that the Court grant the petition and enter judgment on the Award.

## ARGUMENT

This Court has subject-matter jurisdiction over this enforcement proceeding and personal jurisdiction over Ghana.  GPGC has met all the requirements for enforcement of its Award.  Ghana has failed to appear or respond.  The Court should therefore grant GPGC's petition as unopposed and enter judgment on the Award.

## I.    THE COURT HAS SUBJECT-MATTER JURISDICTION

Section 203 of the Federal Arbitration Act grants district courts jurisdiction over any "action or proceeding falling under the [New York] Convention."  9 U.S.C. § 203.  An action "falls under the Convention" if it relates to an "arbitral award arising out of a legal relationship . . . which is considered as commercial" and the dispute involves a foreign party or "some other reasonable relation with one or more foreign states."  9 U.S.C. § 202.  That provision applies here because GPGC seeks to enforce an award rendered in the United Kingdom arising out of a commercial agreement to install and operate power generation plants in Ghana.  Kry Decl. Ex. A.

In addition, the FSIA grants jurisdiction over "any nonjury civil action against a foreign state . . . as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity."  28 U.S.C. § 1330(a).  The respondent, Ghana, is a foreign sovereign government under that provision.  Award ¶ 1.   And at least two exceptions to Ghana's immunity apply.

### A.    Ghana Explicitly Waived Its Immunity

Section 1605(a)(1) provides an exception to sovereign immunity where "the foreign state has waived its immunity either explicitly or by implication."  28 U.S.C. § 1605(a)(1).  Ghana expressly waived its immunity here.  Section 26 of the EPA states:

> To the extent that the GoG [Government of Ghana] may, in any jurisdiction, claim for itself or its assets immunity from suit, execution (whether in aid of execution, before judgment or otherwise) or other legal process, ***the GoG agrees not to claim, and hereby waives, such immunity to the fullest extent permitted by the laws of that jurisdiction*** . . . .

EPA § 26(a) (emphasis added).  That provision explicitly waives Ghana's sovereign immunity.

The FSIA's legislative history makes clear that "a foreign state may waive its immunity in a contract with a private party."  H.R. Rep. No. 94-1487, at 18 (1976).  Consistent with that principle, the D.C. Circuit has repeatedly enforced contractual waivers of immunity.  *See, e.g.*, *Gulf Res. Am., Inc. v. Republic of Congo*, 370 F.3d 65, 72-73 (D.C. Cir. 2004) (finding waiver

where state agreed not to "avail itself of . . . any other benefits or protections" of sovereign status). Courts require that a contract "clearly and unambiguously" waive the sovereign's immunity. *World Wide Mins., Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1162 (D.C. Cir. 2002). That standard is met here: Section 26(a) waives immunity in the clearest possible terms.

### B.    This Action Falls Within the FSIA's Arbitration Exception

This Court also has subject-matter jurisdiction under the FSIA's arbitration exception. Under that exception, a foreign sovereign is not immune from an action "to confirm an award made pursuant to . . . an agreement to arbitrate, if . . . the agreement or award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards." 28 U.S.C. §1605(a)(6). That provision requires the claimant to establish three jurisdictional facts: "the existence of an arbitration agreement, an arbitration award and a treaty governing the award." *LLC SPC Stileks v. Republic of Moldova*, 985 F.3d 871, 877 (D.C. Cir. 2021). All three facts are present here.

The first requirement — an arbitration agreement — clearly exists. The EPA contains an express arbitration clause by which Ghana agreed that "any dispute or disagreement . . . arising out [of] or in connection with this Agreement . . . shall be settled finally by ad-hoc arbitration to be conducted in accordance with the UNCITRAL Rules." EPA §28(f)(xv). The second requirement — an arbitral award — is met too. The tribunal issued its Award against Ghana in an arbitration conducted pursuant to that clause. Award ¶¶3-5.

Finally, the third requirement — a treaty — is met because the Award is "governed by a treaty . . . calling for the recognition and enforcement of arbitral awards." 28 U.S.C. §1605(a)(6). "[T]he New York Convention 'is exactly the sort of treaty Congress intended to include in the arbitration exception.'" *Creighton Ltd. v. Gov't of State of Qatar*, 181 F.3d 118, 123-24 (D.C. Cir. 1999). The New York Convention applies to any award arising out of a commercial dispute

that is rendered in a foreign country that has also signed the Convention. *See* New York Convention arts. I.1, I.3 & accession note, 21 U.S.T. at 2519, 2560 (Kry Supp. Decl. Ex. B). The Award was rendered in the United Kingdom, another signatory state. Award at signature page; Kry Decl. Ex. D (status table). And the dispute arises out of a commercial agreement to install and operate power plants in Ghana.

Ghana therefore lacks immunity, and this Court has subject-matter jurisdiction over this enforcement proceeding.

## II.   THE COURT HAS PERSONAL JURISDICTION AND VENUE

The Court has personal jurisdiction over Ghana. Under the FSIA, "[p]ersonal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have jurisdiction under [section 1330(a)] where service has been made under section 1608." 28 U.S.C. § 1330(b). In other words, "subject matter jurisdiction plus service of process equals personal jurisdiction." *Prac. Concepts, Inc. v. Republic of Bolivia*, 811 F.2d 1543, 1548-49 n.11 (D.C. Cir. 1987). This Court has subject-matter jurisdiction for the reasons above. *See* pp. 8-10, *supra*. And GPGC properly served respondents, as set forth below. *See* pp. 11-12, *infra*.

The Due Process Clause does not impose any limits on this Court's exercise of personal jurisdiction over Ghana. "[F]oreign states are not 'persons' protected by the Fifth Amendment." *Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 96 (D.C. Cir. 2002). As a result, "minimum contacts between the foreign state and the forum state are not required for a court to constitutionally exert personal jurisdiction over the state." *Williams v. Romarm, SA*, 756 F.3d 777, 782 (D.C. Cir. 2014).

Finally, this Court is a proper venue. This Court always has venue over an "action . . . brought against a foreign state or political subdivision thereof." 28 U.S.C. § 1391(f)(4).

III.    **GPGC PROPERLY SERVED GHANA**

GPGC properly served Ghana under the FSIA.  28 U.S.C. § 1608.  Section 1608 lists four methods of service "in descending order of preference."  *Barot v. Embassy of Republic of Zambia*, 785 F.3d 26, 27 (D.C. Cir. 2015).  The first two methods are not available here.  There is no "special arrangement for service" between GPGC and Ghana that would apply to a petition to enforce an arbitral award.  28 U.S.C. § 1608(a)(1).  And Ghana is not a party to the Hague Service Convention or any other "applicable international convention on service of judicial documents." *Id.* § 1608(a)(2); Kry Supp. Decl. Ex. C (status table).

GPGC therefore served Ghana under Section 1608(a)(3).  That provision permits service "by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned."  28 U.S.C. § 1608(a)(3).  GPGC fully complied with that provision here.  The official language of Ghana is English.  *See CIA World Factbook: Ghana* (May 30, 2024) (Kry Supp. Decl. D).  GPGC thus arranged for the Clerk of Court to send copies of the petition, summons, and notice of suit to Ghana's Minister for Foreign Affairs and Regional Integration in Accra, Ghana, and obtained a signed confirmation of receipt.  Kry Service Decl. ¶¶ 2-4 & Ex. C; Dkt. 7 (Clerk's certificate of service).[2]

---

[2] The Clerk sent the packages by DHL at petitioner's request.  Dkts. 5, 7.  Whether DHL qualifies as "any form of mail" under Section 1608(a)(3) is an issue currently pending before Your Honor in *Archirodon v. General Company for Ports of Iraq*, No. 22-cv-1571.  Undersigned counsel will elaborate on that point in the *Archirodon* case, but suffice it to say that the authority supporting this approach is overwhelming.  *See Gates v. Syrian Arab Republic*, 646 F.3d 1, 4-5 (D.C. Cir. 2011) (approving DHL service); *Karcher v. Islamic Republic of Iran*, 249 F. Supp. 3d 557, 560 (D.D.C. 2017) (holding that "DHL . . . is a form of mail requiring a signed receipt"); *Doe v. Democratic People's Republic of Korea Ministry of Foreign Affairs Jungsong-Dong*, 414 F. Supp. 3d 109, 125 (D.D.C. 2019) (holding that "deliver[y] using DHL International . . . satisfies § 1608(a)(3)"); *Thuneibat v. Syrian Arab Republic*, 167 F. Supp. 3d 22, 38 (D.D.C. 2016) (similar);

The service packets were delivered on January 29, 2024.  Kry Service Decl. ¶ 4 & Ex. C.

Ghana's response was due on March 29, 2024.  28 U.S.C. § 1608(d).  Ghana has not filed anything

in response to the petition or otherwise appeared in the case.  Consequently, the Court should grant

GPGC's petition as unopposed and enter judgment on the Award.

## IV.    GPGC HAS SHOWN ITS ENTITLEMENT TO RELIEF

The FSIA requires one final step before a court enters a default judgment against a foreign

state:  The claimant must "establish[] [its] claim or right to relief by evidence satisfactory to

the court."  28 U.S.C. § 1608(e).  Section 1608(e) does not specify what constitutes "evidence

satisfactory to the court" and thus "leaves it to the court to determine precisely how much and what

kinds of evidence the plaintiff must provide."  *Han Kim v. Democratic People's Republic of Korea*,

774 F.3d 1044, 1047 (D.C. Cir. 2014).  Courts have routinely found "sworn affidavits or

declarations . . . and other documents submitted in accordance with the Federal Rules of Evidence"

sufficient.  *Ewan v. Islamic Republic of Iran*, 466 F. Supp. 3d 236, 242 (D.D.C. 2020).  The

evidentiary record clearly establishes GPGC's entitlement to relief here.

### A.    GPGC Satisfies the Threshold Requirements for Enforcement

GPGC seeks to enforce a foreign arbitral award under the New York Convention.  The

Convention's goal is "to encourage the recognition and enforcement of commercial arbitration

agreements."  *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974).  That objective is

consistent with the "emphatic federal policy in favor of arbitral dispute resolution" — a policy that

---

*Abur v. Republic of Sudan*, 437 F. Supp. 2d 166, 173 (D.D.C. 2006) (similar).  This Court's own
manual, checklist, and request form all explicitly authorize DHL service under Section 1608(a)(3).
*See* U.S. District Court for the District of Columbia, *Clerk's Office Procedures for Service of
Process on a Foreign Defendant* 8-10 (May 2022) (Kry Supp. Decl. Ex. E); U.S. District Court
for the District of Columbia, *Service of Process on a Foreign Defendant: Checklist for Attorneys*
2 (May 2022) (Kry Supp. Decl. Ex. F); U.S. District & Bankruptcy Courts for the District of
Columbia, *Affidavit Requesting Foreign Mailing* (June 2018) (Kry Supp. Decl. Ex. G).

"applies with special force in the field of international commerce."  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985).  In light of that strong pro-arbitration policy, confirmation proceedings are a "summary procedure."  *TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 940 (D.C. Cir. 2007).  "[T]he showing required to avoid summary confirmation is high" and "rests with the party resisting confirmation."  *Int'l Trading & Indus. Inv. Co. v. DynCorp Aerospace Tech.*, 763 F. Supp. 2d 12, 20 (D.D.C. 2011).

Under Article I, the Convention applies to any arbitral award arising out of a commercial dispute that is rendered in another signatory state.  Arts. I.1, I.3 & accession note, 21 U.S.T. at 2519, 2560 (Kry Supp. Decl. Ex. B).  As explained above, all those requirements are met here.  *See* pp. 9-10, *supra*.  Article III requires states to "recognize arbitral awards as binding and enforce them in accordance with the rules of procedure of the territory where the award is relied upon."  21 U.S.T. at 2519.  Article IV establishes minimal procedural requirements:  The petitioner must submit "[t]he duly authenticated original award or a duly certified copy thereof" as well as "[t]he original [arbitration] agreement . . . or a duly certified copy thereof."  21 U.S.T. at 2519-20.  GPGC has submitted those materials.  Kry Decl. Ex. A; Bamba Decl. Ex. A.

## B.    There Is No Basis for Denying Enforcement

Under Article V of the New York Convention, a court may deny recognition and enforcement only if one of the narrow exceptions in that provision applies.  21 U.S.T. at 2520.  A court "may refuse to enforce the award ***only*** on the grounds explicitly set forth in Article V."  *TermoRio*, 487 F.3d at 935 (emphasis added).

With respect to the five exceptions to enforcement in Article V.1, the party opposing enforcement must "furnish[ ] . . . proof" that the exception applies.  21 U.S.T. at 2520.  The Convention thus "assigns the burden of persuasion to the party opposing enforcement."  *TMR Energy Ltd. v. State Prop. Fund of Ukraine*, 411 F.3d 296, 304 (D.C. Cir. 2005).  As a result,

where, as here, a respondent fails to appear, the Court need not and should not address whether one of those exceptions applies. *See, e.g.*, *VAMED Mgmt. und Serv. GmbH v. Gabonese Republic*, No. 22-cv-3737, 2024 WL 1092232, at *4 (D.D.C. Mar. 13, 2024) ("Gabon has not made an appearance in this case and has therefore offered no argument, much less 'proof,' for why the award should not be enforced."); *A.D. Trade Belgium S.P.R.L. v. Republic of Guinea*, No. 22-cv-245, 2023 WL 2733773, at *3 (D.D.C. Mar. 31, 2023); *Gebre LLC v. Kyrgyz Republic*, No. 20-cv-1795, 2022 WL 2132481, at *8 (D.D.C. June 14, 2022); *Compagnie Sahelienne d'Entreprise v. Republic of Guinea*, No. 20-cv-1536, 2021 WL 2417105, at *4 (D.D.C. June 14, 2021); *Africard Co. v. Republic of Niger*, 210 F. Supp. 3d 119, 127 (D.D.C. 2016).

Regardless, no ground for non-enforcement applies. Ghana raised only two challenges in the English proceedings. Bailey Decl. Ex. C ¶ 10. As the English court observed, those challenges were so "intrinsically weak" that they did not even warrant an extension of time. *Id.* ¶ 30.

Ghana claimed that the tribunal departed from the parties' agreed-upon arbitral procedures because the EPA required the tribunal to be "guided by the terms and conditions of [the contract]" in resolving the dispute, whereas, in Ghana's view, the tribunal departed from those terms. Bailey Decl. Ex. C ¶ 10. That argument is meritless. Although the Convention permits a court to refuse enforcement where the "arbitral procedure was not in accordance with the agreement of the parties," art. V.1(d), 21 U.S.T. at 2520, Ghana's "procedural" challenge is really just an objection to the tribunal's interpretation of the contract — as the English court held, Bailey Decl. Ex. C ¶¶ 31-32. A party challenging an award on the ground that the tribunal decided the case using non-contractual procedures "bears a substantial burden of proof": "It must demonstrate that the tribunal expressly adopted and applied [non-contractual] standards without the parties having

14

agreed to its doing so."  Restatement (Third) of the U.S. Law of International Commercial and Investor-State Arbitration § 4.13 cmt. e (rev. 2023) (Kry Decl. Ex. H).  The tribunal never did that.

Ghana also claimed that the tribunal "failed to deal with all the issues put to it" by not addressing Ghana's arguments for why GPGC should not recover mobilization costs.  Bailey Decl. Ex. C ¶ 10.  But the New York Convention permits a court to deny enforcement only when an award "contains decisions on matters **beyond** the scope of the submission to arbitration" — not when it merely fails to address a party's argument.  Art. V.1(c), 21 U.S.T. at 2520 (emphasis added); UNCITRAL Secretariat, *Guide on the Convention on the Recognition and Enforcement of Foreign Arbitral Awards* 177 ¶ 14 (2016 ed.) (Kry Decl. Ex. F); Albert Jan van den Berg, *The New York Arbitration Convention of 1958*, at 322 (1981) (Kry Decl. Ex. G).  In any event, as the English court found, Ghana's argument is baseless because the tribunal **did** consider Ghana's arguments about mobilization costs.  Bailey Decl. Ex. C ¶¶ 33-34 (citing Award ¶¶ 463-464, 522).

Article V.2 permits a court to refuse enforcement *sua sponte* even if the respondent does not appear.  Art. V.2, 21 U.S.T. at 2520.  But those exceptions do not apply either.

Article V.2(a) applies where "[t]he subject matter . . . is not capable of settlement by arbitration under the law of th[e] country" where enforcement is sought.  21 U.S.T. at 2520.  This commercial dispute is clearly arbitrable under United States law.  *See* 9 U.S.C. § 2.

Finally, Article V.2(b) applies where "recognition or enforcement of the award would be contrary to . . . public policy."  21 U.S.T. at 2520.  That exception is "construed narrowly" and "applie[s] only where enforcement would violate the [United States'] most basic notions of morality and justice."  *Belize Bank Ltd. v. Gov't of Belize*, 852 F.3d 1107, 1111 (D.C. Cir. 2017).  No such circumstance is present here.

The tribunal rejected Ghana's allegations of impropriety.  Award ¶¶ 269, 331, 448.  Ghana argued that GPGC's lease of the Blue Ocean site was "tainted with ignominious corruption" because GPGC's majority shareholder was also an indirect minority shareholder in Blue Ocean. *Id.* ¶ 331.  GPGC showed, however, that the lease "was an arm's length transaction, undertaken only after an independent expert's valuation of the market rent," and the evidence that Ghana acquiesced in the transaction was "overwhelming." *Id.* ¶¶ 269, 448.

Courts reject public policy defenses where the respondent had a full and fair opportunity to raise its claims of wrongdoing in the arbitration and the tribunal rejected them. *See Tatneft v. Ukraine*, 21 F.4th 829, 838 (D.C. Cir. 2021) (rejecting public policy defense where "[t]he parties have already litigated and arbitrated their claims" and "[i]f Ukraine wanted to raise claims about the illegality of the share purchases . . . it had the opportunity to raise those claims before the arbitral panel"); *Commodities & Mins. Enter. Ltd. v. CVG Ferrominera Orinoco, C.A.*, 49 F.4th 802, 818-19 (2d Cir. 2022) (rejecting defense where "[t]he Panel carefully considered [the] corruption allegations and gave Ferrominera ample opportunity to substantiate its claim").  There is no reason to take a different approach here.

### C.    GPGC Is Entitled to Post-Award Interest

When entering judgment, the Court should include interest through the date of judgment. "[P]ayment of appropriate interest [is] 'a dictate of natural justice' necessary 'to repair all the damages that accrue naturally' from the breach of an obligation." *LLC SPC Stileks v. Republic of Moldova*, 985 F.3d 871, 877 (D.C. Cir. 2021).  "[C]onfirmation petitions under the New York Convention are 'deemed to arise' under the laws of the United States, and '[p]rejudgment interest is an element of complete compensation' in U.S. law." *Id.* (citation omitted); *see also Cont'l Transfert Tech. Ltd. v. Fed. Gov't of Nigeria*, 932 F. Supp. 2d 153, 163-64 (D.D.C. 2013)

(prejudgment interest "should normally be awarded when damages have been liquidated by an international arbitral award"), *aff'd*, 603 F. App'x 1 (D.C. Cir. 2015).

"[A] decision to award prejudgment interest 'must be exercised in a manner consistent with the underlying arbitration award.'" *Stileks*, 985 F.3d at 881. Thus, where a tribunal's award specifies pre-award and post-award interest, a court should apply those same terms in awarding prejudgment interest on the judgment enforcing the award. The tribunal here awarded interest on the Early Termination Payment at the contractually specified six-month LIBOR plus 6% interest rate, compounded monthly, starting on November 12, 2018. Award ¶¶ 535-536, 545. The tribunal ordered interest on costs at the three-month USD LIBOR rate, compounded quarterly. *Id.* ¶ 546. The Court should include prejudgment interest in the judgment at the same rates.[3]

An updated claim calculation showing the total amounts due with interest as of June 7, 2024, is attached as Exhibit A to the Supplemental Kry Declaration. Those calculations account for Ghana's partial payments and the amounts collected by the receivers in London, and they assume (favorably to Ghana) that all payments reduce the principal owing on the Early Termination Payment rather than the costs award. The claim calculation also shows additional interest that should be included in the judgment for each day that elapses between the date of the calculation and the date of entry of judgment. An updated proposed form of judgment is being submitted with this motion.

---

[3] After the Court enters judgment enforcing the Award, post-judgment interest will accrue at the statutory rate prescribed by 28 U.S.C. § 1961.

## **<u>CONCLUSION</u>**

The Court should grant GPGC's motion and enter judgment in the form attached.


Dated:    June 7, 2024                    Respectfully submitted,
          Washington, D.C.


                                            /s/ Robert K. Kry
Sara Tofighbakhsh                         Robert K. Kry
(*pro hac vice*)                          D.C. Bar # 490545
MOLO LAMKEN LLP                           MOLO LAMKEN LLP
430 Park Avenue, 6th Floor                The Watergate, Suite 500
New York, New York  10022                 600 New Hampshire Avenue, N.W.
(212) 607-8179                            Washington, D.C.  20037
stofighbakhsh@mololamken.com              (202) 556-2011
                                          rkry@mololamken.com

          *Attorneys for Petitioner GPGC Limited*

18

## **CERTIFICATE OF SERVICE**

I certify that on June 7, 2024, I caused this motion and the accompanying memorandum of points and authorities, as well as all supporting declarations and exhibits, to be served on respondent by FedEx at the address listed below:


The Government of the Republic of Ghana
Hon. Shirley Ayorkor Botchwey
Minister for Foreign Affairs and Regional Integration
Ministry of Foreign Affairs and Regional Integration
Flat 5 Agostinho Neto Rd.
Accra, Ghana


　　　　　　　　　　　　　　　　 /s/ Robert K. Kry
　　　　　　　　　　　　　　　　Robert K. Kry